679 So.2d 847 (1996)
John Victor HOCH, Appellant,
v.
STATE of Florida, Appellee.
No. 96-01470.
District Court of Appeal of Florida, Second District.
September 13, 1996.
PER CURIAM.
John Victor Hoch challenges the denial of his motion filed pursuant to Florida Rule of Criminal Procedure 3.850. The court correctly denied two of his claims summarily and denied a third which we believe requires an evidentiary hearing or record attachments refuting the allegation. Accordingly, we reverse on that issue.
Hoch alleges in his sworn motion that trial counsel advised him that he would only serve eight to ten years on his proposed seventy-five year term, and in reliance on that advice accepted the offer. He subsequently discovered that the plea post-dated the "Juny-Rios Martinez, Jr. Act" embodied in section 794.011(7), Florida Statutes (1992), which *848 eliminated basic gain time eligibility for sexual battery offenders; Hoch is a sex offender. This allegation of reliance on affirmative misinformation regarding gain time has been deemed facially sufficient by this court as well as others in Florida. Eady v. State, 604 So.2d 559 (Fla. 1st DCA 1992); Tarpley v. State, 566 So.2d 914 (Fla. 2d DCA 1990).
During Hoch's plea colloquy, when the trial judge asked him if he had been promised anything in exchange for the plea besides what developed of record during that proceeding, he replied in the negative. At least one appellate court has determined that that answer during the colloquy forecloses a subsequent claim that the plea was involuntarily entered. Zaetler v. State, 627 So.2d 1328 (Fla. 3d DCA 1993). We do not agree that such a broad-based question which identifies nothing specific about an attorney's representation to the defendant about time actually anticipated to be served should necessarily bar a claim that affirmative misinformation infects the voluntariness of the plea. Because this issue is likely to reoccur with some frequency, we certify conflict with Zaetler.
Although two decisions from this court may appear to suggest otherwise, they are distinguishable. In Trenary v. State, 473 So.2d 820 (Fla. 2d DCA 1985), review denied, 486 So.2d 598 (Fla.1986), the defense attorney advised his client that youthful offender treatment was mandatory, and that his confinement, if he accepted the offer to plead to a reduced charge, was limited to four years in prison. At the time this was an unsettled matter, and the trial court's determination that the crime to which he pleaded no contest was a life felony, without mandatory youthful offender treatment, was ultimately affirmed. After his unsuccessful direct appeal, Trenary moved to vacate the plea and 137 year sentence.
The trial court, citing Trenary's acknowledgement during the plea colloquy that he faced up to life in prison, denied the motion and this court affirmed. It should be noted that considerable weight was given by this court to the fact that the defendant did not immediately move to vacate the plea after the long sentence was imposed, but elected for strategic purposes to proceed with the direct appeal, fearful that the plea to second-degree murder, if withdrawn, would leave Trenary vulnerable once again to a charge of first-degree murder. Additionally, the question posed during the plea colloquy focused specifically on the maximum sentence to which he was exposed, distinguishing it from Hoch's case with a general inquiry about nonrecord promises which may have induced the plea. Moreover, nothing in the case under review suggests that Hoch delayed in bringing the matter to the trial court's attention, nor that he has gained any advantage in the manner in which the issue was brought to the trial court.
In Simmons v. State, 611 So.2d 1250 (Fla. 2d DCA 1992), this court included language suggesting that a negative answer to the question during a plea colloquy about nonrecord promises might serve as an estoppel to a subsequent claim that the attorney offered misinformation about the length of a sentence which would actually be served. Simmons, however, did not involve any misinformation, but rather the misguided expectations of a defendant which were not promoted by his attorney. The dicta regarding estoppel in that decision is not authority which binds this court.
Hoch has established a facially sufficient claim that his plea was involuntarily entered based upon incorrect legal advice by his attorney, and if record attachments do not refute the claim, an evidentiary hearing will be required.
Affirmed in part, reversed in part, and remanded.
ALTENBERND, A.C.J., and QUINCE, J., concur.
FULMER, J., concurs specially with opinion.
FULMER, Judge, concurring specially.
I concur with the majority opinion. However, because the number of claims of this nature seem to be growing, I wish to explain my concurrence and suggest that an additional inquiry during the plea colloquy would produce a record upon which claims like the one before us would be refuted.
*849 In this case, the trial court conducted a legally sufficient plea colloquy and properly included an inquiry of the defendant as to whether anybody had made any promises to him in order to get him to enter his plea. The defendant answered, "No." Defense counsel made no comment. The defendant now claims his plea was involuntarily entered because he was told he would serve a lesser number of years than has proven to be the case. To a former trial judge, this scenario is not surprising. It is surprising, however, that defense counsel would not speak up if, in fact, counsel made representations upon which the defendant relied when deciding to enter a plea. I am of the opinion that it is incumbent upon defense counsel to advise the court of any representations that have been made that could later undercut the voluntariness of a plea. Consequently, I cannot subscribe to the view espoused by the Third District that counsel's silence during the plea colloquy operates to affirmatively refute a later allegation by his or her client regarding misinformation that served to produce a plea.
I recognize that neither the trial court nor defense counsel is required to forewarn a defendant about every conceivable collateral consequence of a plea to criminal charges. However, once counsel elects to give advice about collateral consequences, counsel assumes the risk of being accused of ineffectiveness should the advice prove to be incorrect which, in turn, may give rise to an involuntary plea. This risk should especially be present in those cases where counsel fails to respond to the trial court's question regarding promises about the plea because a response by counsel would refute a later claim of involuntariness or ineffectiveness. Of course, there will be cases where, in response to a client's inquiry regarding how much time will actually have to be served on a sentence, counsel provided only an estimate without realizing that the client translated this information into a guarantee. In these cases, counsel would have no reason to speak up during the plea colloquy. Postconviction claims arising from this situation, as well as those where counsel should have but did not speak up, can only be refuted by the record if the trial court adds an additional inquiry to the plea colloquy regarding the defendant's expectations regarding the sentence.
It is probably not readily apparent to the average defendant that the question, "Has anyone promised you anything or threatened you in any way to get you to enter this plea?" encompasses discussions with defense counsel regarding gain time. While I am not willing to suggest that another mandatory inquiry be added to the list of those that must be posed by the trial court when accepting a plea of guilty or no contest, I would suggest that claims like the one we now review could be avoided if the trial court addressed the issue of gain time during the plea colloquy and advised the defendant that no one can accurately predict the actual time that will be served on a sentence and that the defendant may be required to serve the entire sentence.